Robert D. TULLIS, Appellee,

v.

Larry R. MERRILL, Sr., and Merrill
Security, Inc., Appellants.

No. 96–1079.

Supreme Court of Iowa.

Sept. 23, 1998.

John A. Pabst of Pabst Law Firm, Albia, for appellants.

Steven Gardner of Kiple, Kiple, Denefe, Beaver & Gardner, Ottumwa, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This case centers on a dispute between an employee and his employer over the payment of health insurance premiums. Shortly after the employee sought reimbursement of accumulated sums withheld from his paycheck, his employment was terminated. He sued for breach of the employment contract, payment of back wages, and retaliatory discharge. A jury returned a verdict in the employee's favor, compensating him for unpaid wages and awarding actual and punitive damages resulting from the termination.

On appeal from the judgment entered on the jury's verdict, the employer assigns error to the court's refusal to (1) find for the employer as a matter of law on the retaliatory discharge claim; (2) grant a new trial or judgment notwithstanding the verdict based on excessive damages, actual and punitive; and (3) grant the employer's motion to vacate the judgment based on discovery of new evidence. Finding no error, we affirm.

## I. Background Facts and Proceedings.

A jury could have found the following facts. Plaintiff Robert Tullis was recruited by defendant Larry Merrill, Sr., to assume the newly created position of marketing director for defendant Merrill Security, Inc.[1] The two were friends who shared an interest in flying airplanes. Tullis had been working for the State of Iowa as a probation officer with an annual salary of $31,000. The new job with Merrill would provide base pay of only $25,000, but included use of a company car and plane, and the opportunity to earn commissions. Merrill also represented that Tullis, as a manager, would be entitled to health insurance at the company's expense. On the basis of these representations, Tullis left his job with the state and went to work for Merrill.

A controversy soon arose over the matter of health insurance. No premium payments were deducted from Tullis's first four weekly paychecks. Beginning with the fifth pay period, however, nearly eighty dollars was deducted from his paycheck each week. Tullis discussed the deduction with Merrill. He

---

1. Unless otherwise indicated, we will refer to the defendants jointly as "Merrill."

claimed Merrill told him that business was "a little tight" but before long the company would pick up the expense and reimburse him. Despite a dozen such discussions with Merrill over the next sixteen months, the deductions were regularly taken.

Merrill explained that he originally believed the company could pay Tullis's health insurance expense but later learned that IRS regulations prohibited discrimination in benefits between management and staff. He claimed to have told Tullis so when the matter first arose. Tullis maintained that this explanation did not surface until litigation commenced.

In mid-December 1993, Tullis formally wrote to Merrill, explaining that the insurance cost to him had been "devastating," forcing him "to make some long-term financial adjustments which will likely include selling [his] home." In a polite but firm tone, Tullis insisted that something be worked out "to rectify [the] situation." The two met to discuss the matter. In a follow-up letter dated December 27, 1993, Tullis confirmed that Merrill told him his employment would be terminated as of January 1, 1994, and that Merrill "offered no response when I asked about the possibility of receiving reimbursement for the cost of my medical/hospitalization insurance during my employment per our original agreement."

The controversy eventually made its way to trial. The court submitted the case to the jury on three theories: breach of contract for permanent employment, a statutory claim under Iowa Code section 91A.8 (1995) for unpaid wages, and retaliatory discharge based on violation of the public policy expressed in Iowa Code chapter 91A. Merrill advanced numerous affirmative defenses, among them failure to state a claim upon which relief could be granted and a claim that payment of Tullis's insurance premiums would have been "illegal." The jury found Merrill liable for unpaid wages totaling $5484.76, a sum representing the health insurance premium payment deducted from Tullis's weekly paycheck during the term of his employment; awarded $60,000 in past

lost earnings on Tullis's claim for wrongful discharge; and awarded $40,000 in punitive damages for Merrill's "willful and wanton disregard" for Tullis's employment rights.[2]

Following the denial of motions for new trial and for judgment notwithstanding the verdict (JNOV), Merrill filed this appeal. Further facts will be detailed as they pertain to specific challenges to the district court's instructions and posttrial rulings.

## II. Issues on Appeal.

■ A. *Wage claim/retaliatory discharge.* Central to the parties' dispute, and this appeal, is the question whether Tullis's claim of retaliatory discharge is actionable at law and supportable under the facts sketched above. Merrill first raised the question by way of pretrial motion for summary judgment. The district court denied the motion, finding disputed material facts prevented it from ruling as a matter of law. Merrill renewed the argument by motions for directed verdict at trial, in connection with submission of jury instructions, and in a posttrial motion for judgment notwithstanding the verdict.

The crux of Merrill's argument is this: Even if the record supported Tullis's claim that he was terminated for asserting a right to reimbursement for sums wrongfully withheld from his paycheck, Merrill's conduct violated no public policy giving rise to an exception to the employment-at-will doctrine. Our analysis of the argument requires that we briefly examine the employment-at-will doctrine in light of Tullis's claim under chapter 91A and the definition of "wage."

■ The jury found, and the parties do not contest on appeal, that Tullis had no legitimate expectation of permanent employment with Merrill; he was an employee at will "subject to discharge at any time, for any reason, or for no reason at all." *French v. Foods, Inc.*, 495 N.W.2d 768, 769 (Iowa 1993). Nor do the parties dispute the common law rule making an employer liable for retaliatory discharge, even in the case of at-will employment, "when the discharge violates a

---

**2.** As clarified posttrial, the judgment for unpaid wages was assessed against the corporation only;

the awards for retaliatory discharge were entered against both defendants, jointly.

'well-recognized and defined public policy'" of the state. *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) (quoting *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994)). Merrill simply urged in district court, and renews on appeal, that discharging an employee "for claiming full medical benefits" does not offend a clearly articulated public policy of this state. The district court rejected this argument, and so do we.

Iowa's wage payment collection law defines wages as "[a]ny payments to the employee ... for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer...." Iowa Code § 91A.2(7)(c); *accord Phipps*, 558 N.W.2d at 202. Tullis claimed health benefits allegedly promised by Merrill. This clearly constituted a claim for wages under the statute.

■ The statute goes on to state:

An employer shall not discharge or in any other manner discriminate against any employee because the employee has filed a complaint, assigned a claim, or brought an action under this section or has cooperated in bringing any action against an employer.

Iowa Code § 91A.10(5). In *Phipps*, where the employee alleged retaliatory discharge following a complaint over contributions to a profit sharing plan, we declined to decide whether public policy was violated by the employer's conduct because the record plainly established unacceptable job performance as the reason for termination. *Phipps*, 558 N.W.2d at 203. The record before us is quite different. In answer to an interrogatory seeking reasons for Tullis's discharge, Larry Merrill stated:

Mr. Tullis was terminated because the corporation could no longer afford his salary due to lack of revenue produced. Whether this was due to poor sales ability or the economy, I cannot say. Mr. Tullis was always prompt, available and courteous.

We had no complaints concerning his duties and abilities.

Tullis countered that Merrill's financial concerns were pretextual, pointing to proof of enhanced revenues, additional hiring, and no other "layoffs." Because a jury question was generated on the reason for Tullis's discharge, we are compelled to address the issue left unresolved in *Phipps*. We now hold that Iowa Code chapter 91A plainly articulates a public policy prohibiting the firing of an employee in response to a demand for wages due under an agreement with the employer. The district court did not err in so ruling.

Anticipating our holding, Merrill urges two alternative grounds for reversal.[3] First, he claims that the statutory prohibition against retaliatory discharge pertains only to complaints filed with the labor commissioner in accordance with Iowa Code section 91A.10. Second, he assigns error to the court's refusal to instruct the jury concerning conduct excusable on the ground of illegality. We shall consider the arguments in turn.

■ 1. *Complaint.* Iowa Code section 91A.10 authorizes the labor commissioner to determine whether wages are unpaid and to commence an action in court on behalf of the complainant for their recovery. *See* Iowa Code § 91A.10(1), (2). A companion subparagraph, however, makes plain that this authorization "shall not be construed to prevent an employee from settling or bringing an action for damages under section 91A.8" if the claim has not otherwise been assigned to the commissioner. Iowa Code § 91A.10(3). Administrative regulations implementing chapter 91A address this situation, providing:

The statutory principles of the [wage payment act] would be seriously undermined if employees were discouraged from lodging complaints about wages with their employers. A complaint to the employer made in good faith would be related to the Act, and an employee would be protected

---

**3.** A third ground—that the prohibitory language of section 91A.10 furnishes no private cause of action for its violation—was not raised before the district court and, accordingly, has not been preserved for appeal. *See Miller v. Young,* 168 N.W.2d 45, 50 (Iowa 1969) (appellant may not urge for first time on appeal contention not urged in trial court); *accord Podraza v. City of Carter Lake,* 524 N.W.2d 198, 202 (Iowa 1994).

against discharge or discrimination caused by the complaint to the employer. Iowa Admin. Code r. 347—36.6(2). We are convinced, as was the district court, that Tullis's formal letter to Merrill constituted a complaint related to unpaid wages for purposes of applying section 91A.10(5). Moreover, the fact that this court had not previously ruled on the public policy implications of the statute in no way detracts from its enforceability at the time the discharge occurred. As this court observed nearly a decade ago in *Springer v. Weeks & Leo Co.*,

> by sanctioning wrongful discharge actions for contravention of a public policy which has been articulated in a statutory scheme, we are acting to advance a legislatively declared goal.

*Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 561 (Iowa 1988); *accord Teachout v. Forest City Community Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998).

■ 2. *Illegality.* By pretrial motion for summary judgment, Merrill argued that paying Tullis's health benefits "would render the [company's] plan illegal and in violation of federal law." Renewing the argument at trial, Merrill claimed the failure to pay Tullis's wages as agreed could be excused by proof of illegality. Thus the company sought instructions telling the jury that the Internal Revenue Code requires employees to be treated in the same manner, and that it would be illegal for Merrill to discriminate against or treat employees differently in payment of health care benefits.

The district court refused to submit Merrill's proposed instructions. Ruling on Merrill's motion for new trial premised on this ground, the district court found the record contained insufficient evidence to warrant their submission. Merrill assigns error to this decision on appeal.

We recently summarized the trial court's duty regarding jury instructions:

> Litigants are entitled to have their legal theories submitted if those theories are supported by the pleadings and substantial evidence in the record. Moreover, the court's instructions must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide. The trial court, however, must refuse to instruct on "an issue having no substantial evidential support or which rests on speculation."

*Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997) (quoting *Clinton Land Co. v. M/S Assocs.*, 340 N.W.2d 232, 234 (Iowa 1983)).

We are convinced, as was the district court, that Merrill's illegality theory overstated the risk it faced by abiding with its agreement with Tullis. Section 125 of the Internal Revenue Code, upon which Merrill's argument rests, permits an employer to exclude from an employee's gross income sums paid for health benefits even if the employee may choose benefits from what is known as a "cafeteria plan." 26 U.S.C.A. § 125(a). An exception to this favorable tax treatment arises when an employer favors "highly compensated participants" in the payment of benefits. *See id.* § 125(b)(1)(B). The statute goes on at length, however, to describe exceptions to this exception which may or may not impact the "qualified" status of the employer's benefit plan. *See id.* § 125(g)(2)(A) (special rules).

Beyond submitting a copy of the IRS regulation described, Merrill furnished no proof to substantiate the claim that payment of Tullis's health insurance would have been "illegal." At best one might infer from the regulations that the company risked disqualifying its plan from favorable tax treatment if it abided by Merrill's original agreement with Tullis. The regulation on its face furnishes no cover for an employer who terminates employment in violation of Iowa's wage payment law.

The foundational question for the jury was whether Merrill breached an agreement with Tullis to pay full health benefits. On this point, the court instructed the jury as follows:

> The existence of an agreement concerning payment of health insurance premiums requires a meeting of the minds on the material terms. This means the parties must agree upon the same things in the same sense. You are to determine if an agreement existed from the words and acts

of the parties, together with all reasonable inferences you may draw from the surrounding circumstances.

This instruction clearly conveyed to the jury the issue to be determined under Tullis's claim for unpaid wages. The court committed no error in refusing to instruct on Merrill's "illegality" theory.

**B. *Damages.*** Merrill claims the court erred by not granting a new trial or remittitur of damages for wrongful termination. He claims the $60,000 compensatory damage award was excessive and unsupported by evidence in the record.

Generally speaking, if a jury's award is within the evidence we will not disturb it. *Ballard v. Amana Soc'y, Inc.*, 526 N.W.2d 558, 561 (Iowa 1995); *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 16 (Iowa 1977). In ruling on Merrill's motion, the court applied the four criteria cited in *Rees v. O'Malley:*

> We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support.
>
> The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise.

*Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990) (quoting *Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975)). It would unnecessarily lengthen this opinion to detail the facts upon which the jury could have reasonably calculated Tullis's loss of $60,000. Given Tullis's salary, benefits, and commission potential with Merrill, compared with the salary he earned in the two-and-one-half years following termination, the jury's award could not be characterized as flagrant or excessive. The court was correct in so ruling.

Merrill also mounts two challenges to the award of punitive damages. The first—that punitive damages are ordinarily not available in a first-impression case [4]—was not raised in Merrill's motion for directed verdict and, as the district court correctly noted, cannot be urged for the first time in a motion for JNOV. *See Ragee v. Archbold Ladder Co.*, 471 N.W.2d 794, 798 (Iowa 1991) (applying longstanding rule that motion for JNOV must stand or fall on grounds urged in motion for directed verdict). Thus no error on this point has been preserved for our review on appeal. *See id.*

Merrill did claim at trial that the record was insufficient to support the submission of an instruction on punitive damages. And, by motion for new trial, Merrill claimed the punitive damage award was excessive. In ruling on the issue of punitive damages, the experienced trial court stated:

> It is this court's view that discharging an employee for demanding back wages is the type of egregious conduct that would support substantial punitive damages. There are few things more important than a person's job. There is nothing in this record to indicate that the verdict of the jury was a result of passion or prejudice on its part.

Viewing the record, as we must, in the light most favorable to the jury's verdict, we cannot say the court erred in its ruling on this point. A jury could have determined by a preponderance of clear, convincing, and satisfactory proof that Merrill discharged Tullis in willful and wanton disregard for his employment rights. The sum awarded will deter future misconduct, and is not so out of proportion to the actual damages as to shock the conscience. *See Ezzone v. Riccardi*, 525 N.W.2d 388, 398–99 (Iowa 1994). No ground for vacating or remitting the award has been shown.

**C. *Motion to vacate judgment based on newly-discovered evidence.***

During pretrial discovery, and at trial, Tullis was questioned about whether he

4. In *Lara v. Thomas*, 512 N.W.2d 777 (Iowa 1994), and *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682 (Iowa 1990), this court held that punitive damages should not be awarded in the first case recognizing a new cause of action for retaliatory discharge. *See Lara*, 512 N.W.2d at 782 (discharge in retaliation for seeking partial unemployment benefits); *Smith*, 464 N.W.2d at 687 (retaliatory discharge for filing workers' compensation claim occurred before court recognized cause of action in *Springer v. Weeks & Leo Co.*).

remembered completing health insurance forms which authorized premium deductions from his paycheck. Tullis did not recall filing such forms, nor could he produce copies. He maintained at all times that he never authorized such a deduction. Merrill did not submit a copy of Tullis's insurance enrollment form at trial, nor samples of forms customarily used.

Long after trial, and after this appeal had been filed, Merrill secured copies of two insurance enrollment forms signed by Tullis. Above the signature line on each form is the following statement: "I authorize deductions for this coverage from my earnings *if any such deductions are required.*" (Emphasis added.) When these forms surfaced, Merrill petitioned to vacate the judgment in accordance with Iowa Rule of Civil Procedure 252. The petition asserted the signed applications constituted material, newly discovered, proof that Tullis authorized the deduction of premiums from his wages.

Following a limited remand from this court for purposes of ruling on Merrill's petition, the district court concluded the evidence was not "newly discovered." The court also ruled the exhibits were merely cumulative of other evidence, and would not have changed the outcome of trial had the jury been permitted to consider them. In reaching its decision, the court applied the three-part test outlined in *Benson v. Richardson:*

> A party seeking a new trial on such grounds must demonstrate three things: (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted.

*Benson v. Richardson,* 537 N.W.2d 748, 762 (Iowa 1995).

■ When reviewing a ruling on a petition to vacate a judgment, we grant considerable deference to the district court. *See In re Adoption of B.J.H.,* 564 N.W.2d 387, 391 (Iowa 1997) (district court enjoys wide discretion when ruling on petition to vacate under rule 252). No abuse of the district court's discretion has been shown here. The

record reveals that Merrill made no written request to the insurance company for a copy of the insurance forms until *after* trial. Yet it knew every employee had to sign such forms and, in fact, had blank ones in its possession. Moreover, even if the jury had seen the exhibit, it could still have believed Tullis's claim that he did not consider the clause an authorization for the deduction. The jury's deliberations necessarily centered on the conflict between Tullis's testimony that he relied on the parties' pre-employment agreement and Merrill's testimony that the company had a policy in place that controverted Tullis's assertion. Thus Merrill has failed to establish, as required by *Benson,* that the exhibits would probably change the outcome if a new trial were granted. No ground for reversal appears.

**AFFIRMED.**